UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEBRA L. SPANN, | ) |
| Plaintiff, | ) Case No. C06-1209-MJP-JPD |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | ) REPORT AND RECOMMENDATION |
| Defendant. | ) |

Plaintiff Debra L. Spann appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, 1381 *et seq.*, after a hearing before an Administrative Law Judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for an award of benefits.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff is a forty-six year old woman with a high school degree and two college courses. Administrative Record ("AR") at 20, 60, 374. She has previously worked as a medical clerk, secretary, deburrer, shipper, and as a cashier. AR at 20. Her last gainful employment occurred in 2002. AR at 466, 488.

On March 27, 2002, plaintiff applied for DIB and SSI benefits based on physical and

REPORT AND RECOMMENDATION
PAGE - 1

mental impairments, alleging an onset date of January 1, 2001. AR at 19. Plaintiff asserts that she is disabled due to depression and degenerative disc disease in the neck. AR at 60.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 32-35, 38-40. On November 15, 2004, a disability hearing was held before the ALJ, who eventually concluded that plaintiff was not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy. AR at 21-29. Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 6-8, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). On August 21, 2006, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, settling conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine meticulously the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence of record is susceptible to more than one rational interpretation, it

REPORT AND RECOMMENDATION
PAGE - 2

...

is the Commissioner's conclusions that must be upheld. *Id.*

## IV.  EVALUATING DISABILITY

As the claimant, Ms. Spann bears the burden of proving that she is disabled within the meaning of the Social Security Act ("the Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled or not disabled at any step in the sequence, the inquiry ends without need to consider subsequent steps.

Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION
PAGE - 3

does have a severe impairment, the Commissioner moves to step three to determine whether that impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals a listing for the twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work. *Id.* If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, the burden shifts to the Commissioner at step five to show that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the Commissioner finds the claimant is unable to perform other work, the claimant is disabled and benefits may be awarded.

## V. DECISION BELOW

On April 28, 2005, the ALJ issued a decision denying plaintiff's request for benefits, which found:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant's major depression and cervical degenerative disc disease are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

REPORT AND RECOMMENDATION
PAGE - 4

5.  The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.  The claimant has the following residual functional capacity: the claimant could stand one hour in an eight hour day for ten to fifteen minutes at a time. She could lift ten pounds occasionally and five pounds frequently. Her ability to sit is not limited. She could only perform three step tasks and would need limited public contact.

7.  The claimant is unable to perform any of her past relevant work (20 CFR §§ 404.1563 and 416.963).

8.  The claimant is a "younger individual" (20 CFR §§ 404.1563 and 416.963).

9.  The claimant has "more than a high school (or high school equivalent) education" (20 CFR §§ 404.1564 and 416.964).

10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

11. The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR §§ 404.1567 and 416.967).

12. Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.28 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as assembler for which there are 200 jobs regionally and 8,000 sedentary jobs nationally, and call out operator for which there are 200 jobs regionally.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(g) and 416.920(g)).

AR at 27-28.

## VI.  ISSUES ON APPEAL

The principal issues on appeal are:

1.  Did the ALJ Fail to Provide Clear and Convincing Reasons for Rejecting the Plaintiff's Testimony?

2   Did the ALJ Fail to Properly Evaluate the Opinion of Examining Physician Richard Washburn, Ph.D.?

3.  Did the ALJ Fail to Properly Consider the Evaluations and Opinions of

Diane Hutcheson, ARNP?

4. Did the ALJ Err at Step Five of the Disability Sequential Evaluation Process by Finding that the Plaintiff Could Work in Jobs As An Assembler or a Call-Out Operator?

Dkt. No. 15, p. 1.

## VII.  DISCUSSION

A. <u>The ALJ's Adverse Credibility Determination is Not Supported By Substantial Evidence</u>

At the administrative hearing, the Vocational Expert ("VE") testified that there were 200 jobs available as an assembler and 200 jobs as a call-out operator available in the State of Washington that the plaintiff could fill. AR at 393-94.[2] When asked about the impact of absenteeism, problems of arriving to work on time, and being able to stay consistently through the course of the day, the VE testified that it could probably be accommodated on a once a month basis, "twice a month would be difficult." Three times a month, he stated, would preclude employment. AR at 395.

At one time, the plaintiff was leading a successful working life. She was working for the Boeing Company, and owned a condominium. She was proud of the fact that she had been able to break through certain life issues that had limited her other family members. AR at 351, 390. However, she was laid off from her job at Boeing in 1992 and began a downward spiral at that point. AR at 142, 351-54. She lost her condominium and became homeless for about ten years. AR at 357. She began to live in shelters, and recently obtained housing assistance. AR at 358, 377.

From 1992 until the time of her hearing, the plaintiff testified that she was fired from

---

[2] The plaintiff takes issue with both. First, due to plaintiff's demonstrated inability to deal with the public, the plaintiff rightly questions how she could perform such a job. The plaintiff also challenges the VE's estimation of the number of assembler jobs available. As the VE testified, unskilled assembler jobs are being outsourced overseas. AR at 385. In light of the Court's decision, these issues are moot.

REPORT AND RECOMMENDATION
PAGE - 6

01 18 jobs. AR at 356. Her earnings record reflects that she had 35 different employers during
02 this period. AR at 66-74. None of these jobs lasted for any length of time. She generally
03 lost the jobs because she could not get out of bed due to her depression, could not make it to
04 work in a timely way, felt lost, and had no energy. She testified that she was so depressed
05 that she found herself unable to get out of bed for days at a time. AR at 354-55, 359, 371. If
06 deemed credible, in light of the testimony of the VE, the plaintiff would be disabled, because
07 there would be no jobs available for her at step five of the sequential disability analysis.

08 The ALJ found that plaintiff's depression constituted a severe impairment. AR at 27.
09 However, the ALJ also found that plaintiff's description of the impact on her ability to work
10 was not totally credible. *Id.* The ALJ provided two reasons to justify her adverse credibility
11 determination. First, the ALJ noted that the plaintiff was able to attend school during part of
12 the period involved. AR at 25. Second, the ALJ held that the plaintiff failed to show up for
13 therapy and did not take medications as prescribed, even though she experienced
14 improvements when she took her medication. *Id.*

15 As noted above, it is the responsibility of the ALJ to determine credibility, to settle
16 conflicts in medical testimony, and to resolve any other ambiguities that might exist.
17 *Andrews*, 53 F.3d at 1039. Once a claimant produces medical evidence of an underlying
18 impairment, however, the ALJ may not discredit the claimant's testimony as to the severity of
19 symptoms solely because they are unsupported by objective medical evidence. *Reddick*, 157
20 F.3d at 722 (citations omitted). Absent affirmative evidence showing that the claimant is
21 malingering, the ALJ must provide clear and convincing reasons, supported by substantial
22 evidence, for rejecting the claimant's testimony. *Id*. "General findings are insufficient; rather,
23 the ALJ must identify what testimony is not credible and what evidence undermines the
24 claimant's complaints." *Id.*[3]

25

26 [3] The ALJ may consider ordinary techniques of credibility evaluation, including a reputation for truthfulness, inconsistencies in testimony, or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the

REPORT AND RECOMMENDATION
PAGE - 7

Although this Court is extremely reluctant to second-guess credibility determinations made by an ALJ, in this case, there is no evidence of malingering,[4] and the reasons offered by the ALJ for rejecting the plaintiff's testimony do not rise to the level of "clear and convincing." The first proffered reason is that the plaintiff attempted to take some college classes, and the ALJ determined that she was "able to go to college until she ran out of funding. There is no indication that she was unable to attend classes." AR at 24. In fact there is such evidence in the record. As the plaintiff testified:

> Q: One question; you indicate that if there was a job that you want, or, or training that you wanted to do, that you'd really try to do that and you mentioned again the X-ray technician training?
>
> A: Yes, sir.
>
> Q: You tried that before once, and it didn't work out?
>
> A: Yes, sir.
>
> Q: Did you want to do it then?
>
> A: Yes, I did. And, Mr. McKee, I don't know, it just – I tried going to school and I just couldn't, I couldn't, I just couldn't bring myself to just get up and go. I mean I –
>
> Q: Even if you wanted it?
>
> A: –and I wanted it.
>
> Q: Okay.
>
> A: – and I still want it because that – I'm thinking that would be the job that would – to show my family that I'm not stupid. It would be the job that I could get and it would be comparable to the wages I was making at Boeing and, you know, it's just – but – I just–

---

nature, severity, and effect of the symptoms of which the claimant complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (internal citations omitted.).

[4] The Commissioner does not suggest that the plaintiff was a malingerer. Any such attempt to classify the plaintiff as such would be rebutted by the fact that the plaintiff, in fact, attempted to work at 35 different jobs, and also attempted to improve her skills by trying community college.

REPORT AND RECOMMENDATION
PAGE - 8

AR at 390.

The plaintiff took a total of two community college classes over a two year period. AR at 374. When the ALJ asked her why she stopped going to school, she testified: "Anyway, after I was approved my grant, I just stopped going to school. I'd go once, every other day, once a week." AR at 374. When asked why she stopped going to school, she responded: "I just couldn't [get] up. I just wanted to lay there and sleep." *Id.* She lost her Pell Grant which enabled her to go to school. AR at 375. The ALJ's statement that there was no indication that the plaintiff could not attend classes for reasons related to her impairment is not supported by the record.

The second reason offered by the ALJ to discount the plaintiff's credibility was her alleged failure to follow-up on medications and therapy. The ALJ noted that the plaintiff frequently stopped taking medication (AR at 169), failed at follow-through with treatment (AR at 302), and failed to show up for therapy treatment (AR at 25, 27–80, 283-85, 289-93). Lack of consistent treatment for mental conditions is a legitimate credibility consideration. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). In his brief, the Commissioner attempts to link the lack of treatment to lack of motivation rather than to mental health difficulties by citing to the findings of examining psychiatrist Jay Jawad, M.D., in January 2003. Comm'rs Brief at 8-9. However, even the ALJ rejected Dr. Jawad's opinion that the plaintiff's failure to work was "almost entirely volitional." AR at 25. Dr. Jawad's opinion cannot therefore serve as the basis to support the Commissioner's contention.

In this case, the alleged failures appear to be directly tied into the plaintiff's mental health conditions. For example, the plaintiff was unable to increase her medication of Effexor to treat her psychosis from 75 milligrams to 150 milligrams, because the colors of the 150 milligram tablets were too dark, whereas the 75 milligram tablets were bright blue and pink. AR at 297. In addition, she was unable to participate in certain follow-up treatment because she was in crisis at the time. AR at 302. Her missed appointments appear to be

REPORT AND RECOMMENDATION
PAGE - 9

symptomatic of her mental illness and memory impairments. AR at 307.

In *Nguyen v. Chater*, 100 F.3d 1463, 1465 (9th Cir. 1996), the issue before the court was the weight to be accorded to a medical opinion relating to mental health conditions, in light of a failure to participate in treatment sessions. The holding is instructive on the ALJ's credibility assessment in this case.

> [I]t is common knowledge that depression is one of the most underreported illness in the country because those afflicted often do not recognize that their condition reflects a potentially serious mental illness. *See e.g.*, Warren E. Leavy, Hidden Depression, Chi. Trib., Feb 1, 1996 at 7 (noting that nearly 17 million adult Americans suffer from depression in a given year and that two-thirds of them do not get treatment). Thus, the fact that claimant may be one of millions of people who did not seek treatment for a mental disorder until late in the day is not a substantial basis on which to conclude that Dr. Brown's assessment of claimant's condition is inaccurate. As the Sixth Circuit has noted in finding invalid and ALJ's reasons for rejecting claimant's assertions about his depression, "[a]ppellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."

*Id.* at 1465 (quoting *Blankenship v. Bowen*, 874 F.2d. 1116, 1124 (6th Cir. 1989)). *See also Regennitter v. Commissioner*, 166 F.3d 1297, 1297 n.1 (9th Cir. 1999). The rejection of the plaintiff's testimony based on a failure to seek treatment or take medication is not clear and convincing, given the nature of her impairment, and given the fact that she attempted, albeit unsuccessfully, more than 18 separate times to hold on to a job, but was unable to do so due to her mental impairments.

Finally, in his brief, the Commissioner states that because the plaintiff was able to take care of her daily needs, the adverse credibility determination should be sustained. The plaintiff's meals are generally of the microwave noodle variety or salads. AR at 388. Ability to perform daily activities is not a clear and convincing reason to reject an individual's testimony. One need not be "utterly incapacitated" in order to be disabled. *Vertigan v. Halter*, 260 F.3d 1044 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

REPORT AND RECOMMENDATION
PAGE - 10

01      B.      The ALJ Did Not Properly Evaluate Dr. Washburn's Opinions

02      Relevant medical evaluations of the following physicians/medical centers were before
03 the ALJ at the time of plaintiff's November 14, 2004, disability hearing:  examining
04 psychologist Richard Washburn, Ph.D. (AR at 142-48); Harborview Medical Center (AR at
05 165-68); Harborview Medical Center Women's Clinic (AR at 189-219); consulting physician
06 Mikhail Makovski, M.D. (AR at 222-25); consulting physician Jay Jawad, M.D. (AR at 226-
07 29); non-examining Mental RFC examination and Psychiatric Review Technique Form
08 completed by state agency psychologists (AR at 237-39, 240-53); Psychiatric Evaluation dated
09 March 26, 2003, by Highline West Seattle Mental Health Center (AR at 254-55, and 256-68);
10 medical records from Mary Harris-Giles (AR at 273-302); medical records from Diane
11 Hutcheson, and a Psychological Evaluation by Diane Hutcheson (AR at 303, 304-08).

12      The plaintiff argues that the ALJ failed to give proper weight to the opinions of Dr.
13 Washburn and nurse practitioner Diane Hutcheson.[5]  The Commissioner disagrees, insists that
14 those medical conclusions are controverted, and argues that the ALJ's reasons for rejecting
15 them were specifically outlined and sufficiently legitimate.

16      As a matter of law, more weight is given to a treating physician's opinion than to that
17 of a nontreating physician because a treating physician "is employed to cure and has a greater
18 opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751.
19 "Likewise, greater weight is accorded to the opinion of an examining physician than a
20 non-examining physician." *Andrews*, 53 F.3d at 1041; *see also* 20 C.F.R. § 416.927(d)(1).
21 However, under certain circumstances, an examining physician's opinion can be rejected,
22 whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751.  If an ALJ rejects
23 the opinion of a treating or examining physician, the ALJ must give clear and convincing
24 reasons for doing so if the opinion is not contradicted by other evidence, and specific and

25
26
       [5] In light of the disposition of this matter, the claimed error regarding the ALJ's
    treatment of Ms. Hutcheson's testimony is moot.

REPORT AND RECOMMENDATION
PAGE - 11

legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

Examining physician Dr. Washburn concluded that the plaintiff would have significant interference with the ability to interact appropriately with co-workers, supervisors and the public, and in her ability to control physical and motor movements, and maintain appropriate behavior. He also opined that she would have significant interference in her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting. AR at 144. Dr. Washburn also diagnosed plaintiff as suffering from dysthmic disorder, general anxiety disorder, and avoidant personality disorder with schizoid passive-aggressive and paranoid features. AR at 143. He evaluated the plaintiff's overall global illness as "marked," and reported problems of poor concentration. AR at 143-44. Dr. Washburn also stated that the plaintiff had been "depressed for an extended period of time and just wants to withdraw and sleep." *Id.* Her ability to respond appropriately and tolerate pressures and expectations of a normal work setting was listed as "marked," and she was described as "seriously disturbed." AR at 145.

The ALJ stated that she considered Dr. Washburn's medical opinions, but noted "that he felt she would improve with treatment and the claimant has failed to follow prescribed treatment." AR at 25. This was the sole basis offered by the ALJ for discounting Dr. Washburn's opinion. As discussed above, this does not rise to the clear and convincing level required as an appropriate basis for a finding of lack of motivation or for discounting the seriousness of the plaintiff's depression in this case. In addition, Dr. Jawad's opinion, which

REPORT AND RECOMMENDATION
PAGE - 12

was substantially discredited by the ALJ, cannot serve as a basis for discrediting Dr. Washburn's opinion.

### C. The Appropriate Remedy Is a Remand For An Award of Benefits

The ALJ erred by her adverse credibility determination and in her evaluation of Dr. Washburn's medical opinion. In *Regennitter*, the court reiterated that if the claimant's testimony or a doctor's opinion should have been credited and, if credited, would have led to a finding of eligibility, the court may order the payment of benefits. *Regennitter*, 166 F.3d at 1300 (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)). The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

> Such a circumstance arises when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77.

In this case, all three conditions are satisfied. Moreover, it has been over five years since the plaintiff sought benefits. For all these reasons, this matter should be remanded to the Commissioner for an award of benefits to the plaintiff.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for an award of benefits. A proposed order accompanies this Report and Recommendation.

DATED this 10th day of April, 2007.

/s/ James P. Donohue
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 13